**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Rahshun Turner, et al.,<br><br>    Plaintiffs,<br><br>              v.<br><br>County of San Bernardino,<br><br>    Defendants. | 16-cv-000355 VAP (JDBx)<br><br>**Order GRANTING Joint Motion for Preliminary Approval of Consent Decree and Notice to the Class (Doc. No. 81).** |

On April 16, 2018, Named Plaintiffs Rahshun Turner, Monique Lewis, Jaime Jaramillo, and Joshua Mills (collectively "Plaintiffs") and Defendant County of San Bernardino ("Defendant") filed a Joint Motion for Preliminary Approval of a Consent Decree ("Motion").  (Doc. No. 81).  Having considered the papers filed in support of the Motion, the Court GRANTS the Motion.

## I. BACKGROUND

### A. The Action

The Named Plaintiffs Zachary Shovey and George Topete (collectively "Plaintiffs" or "Named Plaintiffs") are current or former detainees of the San Bernardino County Jails ("Jails").  On February 29, 2016, the Named Plaintiffs filed a Class Action Complaint ("Complaint") against Defendant County of San Bernardino in the above-captioned case pending in this Court ("Action").  (See Doc. No. 81).

United States District Court
Central District of California

The Complaint alleged that Defendant violated Plaintiffs' rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and under federal disability laws.  (Doc. No. 1 at ¶ 4).  Specifically, Plaintiffs alleged that Defendant failed to provide minimally adequate medical, mental, and dental healthcare to inmates, that jail staff used unnecessary and excessive force against prisoners, and that prisoners with physical and mental disabilities did not have access to programs, services, and activities.  Id.  Plaintiffs sought injunctive and declaratory relief on their own behalf and on behalf of those similarly situated.  (Id. at ¶ 5).

Plaintiffs alleged that Defendant failed to provide adequate medical care by, among other things, inadequately screening for serious health conditions and disabilities, delaying access to clinicians and medications, understaffing healthcare professionals, delaying access to specialty care, and failing to provide the full array of services necessary to meet minimum standards of care for the Jails.  (Doc. No. 41 at ¶ 12).  Plaintiffs further alleged that Defendant provided inadequate mental health care because its delivery system was deficient in staffing, screening, therapeutic treatment, suicide prevention, medication management, timely evaluations, recordkeeping, and confidentiality.  (Id. at ¶¶ 13-23).  Plaintiffs also alleged that Defendant denied Plaintiffs necessary dental services necessary and failed to keep adequate health care records.  (Id. at ¶¶ 30-32).

Plaintiffs alleged that the Jails had a policy and practice of using excessive force that subjected people to the risk of serious injury even when such force was not necessary to ensure safety and security.  (Id. at ¶¶ 33-36).   Plaintiffs asserted that Defendant did not adequately train, supervise,

and discipline correctional officers and that its policies and procedures for use of force were inadequate.  (Id. at ¶¶ 34–35).  Plaintiffs also claimed that Defendant failed to protect inmates from violence at the hands of other inmates.  (Id. at ¶¶ 37–42).  Plaintiffs stated that there were not enough correctional officers to supervise or classify inmates adequately and to respond to requests for protection.  (Id. at ¶¶ 37-41).

Plaintiffs also alleged that Defendant's policies and practices discriminated against inmates with disabilities.  (Id. at ¶¶ 43-49).  Allegedly, Defendant did not adequately identify inmates' disabilities and assistive devices at the time of intake.  (Id. at ¶ 44).  In addition, it did not provide required assistive devices or medical supplies to inmates in a timely fashion. (Id. at ¶¶ 45, 47).  Plaintiffs also claimed that Defendant did not house inmates with disabilities in locations where they could safely gain access to programs and services.  (Id. at ¶ 46).  Finally, Plaintiffs alleged that Defendant lacked effective procedures for inmates to contest disability discrimination.  (Id. ¶ at 48).

Plaintiffs filed a First Amended Complaint ("FAC") on September 30, 2016.  (Doc. No. 29).  The FAC stipulated that Rahshun Turner would substitute Plaintiffs Shovey and Topete as the Named Plaintiff.  (Doc. No. 25 at 2).  On November 18, 2016, Plaintiffs filed a Second Amended Complaint ("SAC").  (Doc. No. 41).  The SAC added Monique Lewis, Jaime Jaramillo, and Joshua Mills as Named Plaintiffs.  (Id. at ¶ 3).

The SAC also added a legal claim to compel Defendant to cease excessive use of solitary confinement.  Plaintiffs alleged that Defendant had a policy and practice to confine hundreds of people in small cells for at least

23 hours a day, and for months and years at a time.  (Id. at ¶¶ 50-66).
Plaintiffs claimed that this prolonged solitary confinement was particularly
traumatic for people with psychiatric or intellectual disabilities.  Plaintiff also
claimed that Defendant lacked procedures to accommodate inmates with
disabilities. (Id. at ¶ 64).

### B.  The Settlement Class

The parties filed an unopposed Joint Motion for Class Certification on
December 1, 2016.  (Doc. No. 44).  The settlement class consists of (1) "all
people who are now, or in the future will be, incarcerated in the San
Bernardino County Jails" and (2) a Plaintiff Subclass of "all people who are
now, or in the future will be, incarcerated in the San Bernardino County jails
and who have a psychiatric and/or intellectual disability."  (Id. at ¶ 1).  The
Court granted the Joint Motion for Class Certification on January 27, 2017.
(Doc. No. 50).

The parties agreed to suspend discovery in order to engage in
settlement negotiations.  (Doc. No. 56).  The parties also agreed to hire
three experts to develop recommendations and issue reports.  (Doc. No. 80
at ¶ 4).  Pursuant to that agreement, Todd Wilcox and Roberta Stellman
were hired to provide reports regarding the Jail's medical, and mental health
program.  Id.  In addition, Jeffrey Schwartz and Gary Raney provided
recommendations regarding use of force in the jails.  Id.  The experts
conducted extensive tours and reviews of the jail facilities, policies, and
procedures.  (Doc. No. 81, Exh. 1 at 3).  In addition, the experts interviewed
jail staff and inmates as part of their investigation.  Id.  The parties jointly
proposed a consent decree that incorporates a remedial plan to remedy

alleged violations ("Consent Decreee").  (Doc. No. 81 at 4).  On March 28, 2018, the parties jointly filed the instant Motion.  (Doc. No. 81).

### C.  Consent Decree

This Consent Decree provides for the settlement of the pending claims against Defendant in <u>Rahshun Turner et al. v. County of San Bernardino</u>, Case No. 16-00355-VAP.  It is attached as Exhibit 1 to Plaintiffs' Memorandum of Points and Authorities In Support of Joint Motion for Preliminary Settlement Approval.  (Doc. No. 81, Exh. 1).  Key provisions of the Consent Decree are outlined below.

#### 1.    Remedial Plan

Based on reports from the joint neutral experts and the investigation of ADA issues by Plaintiffs' counsel, the parties have agreed on a detailed remedial plan (the "Plan") that Defendant will be required to implement. (Doc. No. 81, Exh. 1, at ¶ 10).  The Plan addresses each of the substantive areas in dispute.  (Doc. No. 81 at 4).  The main aspects of the Plan are discussed below.

#### a.    Medical Care

The Plan is designed to meet the minimum level of health care necessary to fulfill Defendant's obligations under the Eighth and Fourteenth Amendments.  (Doc. No. 81, Exh. 1, at ¶ 10).  Defendant shall implement adequate electronic health care records for both new and existing inmates. (Doc. No. 81, Exh. 1, at Exh. A, (I)(A)(i) and (ii)).  Defendant shall also hire sufficient nursing staff to perform all medical intake screening and assessments and to implement infection control processes for inmates,

staff, and visitors.  (Id. at (I)(B) and (C)).  Defendant has implemented an electronic kiosk system to allow inmates to make non-urgent health care requests.  (Id. at (I)(D)(i) and(ii)).  In addition, Defendant shall implement a comprehensive specialty clinic scheduling procedure for Plaintiffs who require higher-level medical services.  (Id. at (I)(E)).  Further, Defendant shall continue to comply with standards to review cases of inmates who die while in custody and policies to take corrective action when necessary.  (Id. at (I)(F)).  Finally, Defendant shall continue to improve the quality of its care and continue to comply with required quality standards.  (Id. at (I)(H)).

### b.    Mental Health Care

The Plan requires Defendant to implement an organizational chart that defines the scope of mental health services, chains of authority, performance expectations, and standards for mental health services.  (Id. at App. A, (II)(A)).  Defendant's policies shall include a menu of available services, timeframes for each procedure, an intake system, and credentialing requirements for the delivery of services.  (Id. at (II)(B)).  In addition, Defendant will complete yearly staffing analyses, maintain sufficient hired staff, and ensure that at least one licensed professional is on site at all times.  (Id. at (II)(C)).  Further, Defendant will ensure that nursing staff verify psychiatric medications at intake and develop a policy for inmate refusal of medications.  (Id. at (II)(D)).  Defendant shall implement procedures for suicide prevention, including risk assessments, counseling services, and the use of safety cells.  (Id. at (II)(F)).  Finally, Defendant shall implement services for inmates with serious mental illness who cannot be housed in general population cells, ensure that each patient receives an individualized treatment plan, and implement adequate discharge plans for rehabilitated inmates.  (Id. at (II)(H)).

### c.    Dental Care

Defendant must revise its oral care policy to distinguish between routine, urgent, emergency, and restorative dental treatment.  (<u>Id.</u> at (III)(A)). Defendant shall also revise its policy for dental care requests.  (<u>Id.</u> at (III)(B)).  Finally, Defendant will adopt a policy for preventive dental care. (<u>Id.</u> at (III)(C)).

### d.    The Use of Force

The Consent Decree requires Defendant to ensure that jail deputies follow a completely revised policy for the use of force and the investigation of use of force.  (Doc. No. 81 at 4).  Defendant shall adopt, complete training on, and implement a new "Use of Force Policy."  (Doc. No. 81, Exh. 1).  Defendant shall also provide training for Jail staff to ensure that each member understands the restrictions with respect to using force.  (<u>Id.</u> at Exh. A, (IV)(B)).  Finally, Defendant shall consider adopting some form of "early warning system" to identify staff who might require further training, as well as consider whether it should utilize a direct supervision model for jail staff.  (<u>Id.</u> at (C)(i) and (ii)).

### e.    The Use of Restrictive Housing

Defendant shall ensure that all prisoners, with very limited exceptions, spend a minimum weekly period of 24 hours outside their cells.  (Doc. No. 81 at ¶ 1 (b)).  Defendant shall develop policies to avoid the unlawful use of segregated or restrictive housing in the jails.  (Doc. No. 81, Exh. 1 at ¶ 10). Defendant shall, to the extent feasible, eliminate routine, widespread, and long-term use of solitary confinement.  (<u>Id.</u> at Exh. A, 14(IV)(B)).  Defendant shall also revise its policies using restrictive housing for disciplinary

purposes to ensure that inmates are given adequate notice of their charges and to ensure that disciplinary measures are consistent.  (Id. at (D)).  Before an inmate with a serious mental illness is placed in segregated housing, Defendant shall ensure that charges are reviewed by a clinician to determine the extent to which the charge was related to mental illness.  (Id. at 11(K); 15(E)).  Defendant shall also ensure that any cells used for restrictive housing meet the same standards as those applicable to other inmate accommodations.  (Id. at 15(F)(i)).

### f. Equal Access to Programs for People with Disabilities

Prisoners with disabilities will be identified and receive appropriate accommodations to ensure that they have equal access to housing and programs as all other inmates.  (Doc. No. 81 at 5).  Within 60 days after the Court approves this Plan, Defendant shall implement the policies attached to its Plan to ensure compliance with the Americans with Disabilities Act (42 U.S.C. § 12101) and § 504 of the Rehabilitation Act of 1973.  (Id. at Exh. 1, Exh. A, 3).

### g. Compliance

Defendant shall develop appropriate plans to ensure compliance with the Plan by submitting any new policies to Plaintiffs' counsel for review and comments.  (Doc. No. 81, Exh. 1 at ¶ 11).  Between 90 and 120 days after the approval of the Consent Decree, Defendant shall provide Plaintiffs' counsel and the hired experts a Status Report stating whether Defendant is complying with the Consent Decree.  (Id. at ¶ 12).  Every 120 days, Defendant shall also provide Plaintiffs' counsel a Status Report addressing each item of the Plan and Defendant's level of compliance with it.  Id.

### 2.    Court Experts

The Consent Decree provides that Todd Wilcox, Roberta Stellman, Jeffrey Schwartz, and Gary Raney shall be appointed as Court experts to provide advice on Defendant's compliance with the Plan, to assist with dispute resolution, and to provide testimony before the Court if required. (Doc. No. 81 at 5).  The Court experts shall also compile "180-Day Reports" to provide advice on Defendant's level of compliance with each material component of the Plan.  (Id. at Exh. 1, ¶¶ 14-15).  Further, the Court experts shall have reasonable access to all parts of any San Bernardino Jails, correctional and health care staff, inmates, and documents.  (Id. at ¶ 17).

### 3.    Plaintiffs' Monitoring and Access to Information

The Plan calls for Plaintiffs to monitor Defendant's compliance.  (Id. at (E)).  To this end, Plaintiffs' counsel shall have access to all San Bernardino Jail facilities, documents, records, and staff that Plaintiffs believe to be necessary to monitor compliance.  (Id. at ¶21).  For two years following the Court's approval of the Consent Decree, Plaintiffs will be permitted to conduct three tours of the San Bernardino Jails to monitor compliance with the plan.  (Id. at ¶ 22).  Thereafter, Plaintiffs may conduct up to two tours of the Jails per year.  Id.  If Plaintiffs form the good faith belief that Defendant is not compliant with the material components of the plan, Plaintiffs may inform Defendant, who shall investigate the alleged noncompliance and provide a prompt report.  (Id. at ¶24).

### 4.    Individual Advocacy

Plaintiffs may alert Defendant's counsel to any concerns related to health care, use of force, restricted housing, or disability accommodation in Defendant's jails.  (Id. at ¶ 27).  Nevertheless, this process does not replace

or circumvent existing processes for inmates to submit grievances to jail authorities.  Id.  In addition, the Plan does not affect the ability of current inmates to sue for money damages or to petition for a writ of habeas corpus.  (Doc. No. 81, Exh. 2 at 3).

### 5.   Dispute Resolution

The parties will participate in an informal dispute resolution process in the event of a dispute.  (Doc. No. 81 at (G)).  If the parties fail to resolve the dispute, the relevant Court expert will evaluate the issue and prepare a report.  (Id. at ¶ 30).  Should the dispute resolution process continue to fail, the Court will retain jurisdiction to enforce compliance.  (Doc. No. 81 at 5).

### 6.   Duration and Termination

The Consent Decree shall remain in effect for four years.  (Doc. No. 81, Exh. 1 at ¶ 34).  Nevertheless, Defendant may seek termination two years after the Consent Decree goes into effect.  (Id. at ¶ 35).  If Plaintiffs form the good faith belief that Defendant is no longer in compliance with any material components of the Plan and Defendant disagrees with Plaintiffs, Plaintiffs may file a motion before the Court to seek appropriate relief.  (Id. at ¶ 37).

### 7.   Attorneys' Fees and Costs

Subject to Court approval, Defendant will pay Plaintiffs' counsel $350,000 for expenses incurred from the time of the first filed Complaint to the date of approval of this Motion.  This represents a rate of $420 per hour for attorneys and $200 per hour for paralegals.  (Id. at ¶ 38).  Plaintiffs' counsel will also be compensated for time and expenses related to monitoring compliance with the Plan, provided that Plaintiffs' expenses be capped at $150,000 per year.  (Id. at ¶ 39).

**8.    Notice**

The Plan provides for Defendant to give notice in English and Spanish to class members of this Action.  (Doc. No. 81 at 5-6).  Defendant will post the notice at visible locations in every housing unit at the Jails.  Id. Defendant will also deliver a copy of the notice to all inmates housed in units with restricted movement and limited access to other areas of the Jails.  Id. Notices shall include a description of Plaintiffs' claims, the definition of the classes, notice that the parties have entered into a Consent Decree and the areas it covers, and the contact information for inmates to contact Plaintiffs' counsel. (Id. at 6).  Defendant will also allow Plaintiffs to fill out a form to request a copy of the Consent Decree and the Plan. Id.

## II.    LEGAL STANDARD

 "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).   At the preliminary approval stage, the Court need only consider whether the proposed settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

Courts in the Ninth Circuit consider a series of factors in assessing preliminary certification of class actions under Rule 23 of the Federal Rules of Civil Procedure, including "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

United States District Court
Central District of California

maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); see also In re Oracle Sec. Litig., 829 F. Supp. 1176, 1179 (N.D. Cal. 1993).

These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances.  Torrisi v. Tuscan Electric Power Co., 8 F.3d 1370, 1375, 1376 (9th Cir. 1993).  In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place, create a presumption that the agreement is fair."  Linney v. Cellular Alaska Partnership, 1997 WL 4500 64, *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d at 1234.

It is often challenging to "judge with confidence the value of the terms of a settlement agreement, especially one [that] provides for injunctive relief."  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).  To assess overall fairness, the Court must examine the complete settlement package, rather than individual component parts in isolation.  Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco, 688 F.2d 615, 625, 628 (9th Circ. 1982).

Furthermore, while attorneys' fees and costs may be awarded in a certified class action, (Fed. R. Civ. P. 23(h)), courts have an independent obligation to ensure that any attorneys' fee award included in proposed

settlement is reasonable, even if the parties have already agreed to an amount.  In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

## III.   DISCUSSION

### A.  Fairness, Adequacy, and Reasonableness of the Settlement

#### 1.   Arms-Length Negotiations

A settlement that is the product of an arms-length negotiation "conducted by capable and experienced counsel" is presumed to be fair and reasonable.  Roe v. SFBSC Management, LLC, No. CV 14-3616 LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (quoting Garner v. State Farm Mut. Auto Ins. Co., 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); Bautista v. Harvest Mgmt. Sub LLC, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *12 (C.D. Cal. Oct. 16, 2013) ("A settlement reached through the assistance of an experienced mediator supports a determination that the settlement process was not collusive.").

Starting in January, 2015, the parties engaged in "arm's-length, serious, informed, and non-collusive negotiations" between experienced and knowledgeable counsel.  (Doc. No. 81 at 2).  These negotiations included the appointment of joint neutral experts to inspect the Jails and issue reports; exchanges of data, documents, and information; and the development of individual remedial plans to address Plaintiffs' claims.  (Id. at Exh. 1, ¶¶ 4-8).

United States District Court
Central District of California

"The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  Satchell v. Fed. Express Corp., No. C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); see also, Alexander Mfg., Inc. v. Illinois Union Ins. Co., 666 F. Supp. 2d 1185, 1202 (D. Or. 2009).  The parties consented to the use of mediator Debra Mellinkoff or such other mediator as the parties may select.  (Doc. No. 81, Exh. 1 at ¶ 28). The Court is thus satisfied the Consent Decree is the product of a non-collusive, arms-length negotiation.

### 2.  Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court does not reach any final conclusions regarding the contested issues of fact and law that underlie the merits of Plaintiffs' case.  Aguilar v. Wawona Frozen Foods, No. CV 15-00093 DAD (EPGx), 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017).  Instead, "the court is to 'evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements.'"  Id.  (Quoting In re Wash. Pub. Power Supply Sys. Sec. Litig., 720 F. Supp. 1379, 1388 (D. Ariz. 1989)).

Plaintiffs' collective action claims appear strong, since Defendant stated that it did not intend to file a Rule 12 motion or any other motions directed at Plaintiffs' Complaint.  (Doc. No. 17 at 3).  This suggests that Plaintiffs' claims might have enough merit to warrant a trial.  The complexity of damages and the large number of plaintiffs, however, also pose risks to Plaintiffs' case, including the possibility of an adverse decision on the merits.  In addition, Defendant continues to deny any wrongdoing, and has only admitted that "there exists probable cause to believe that violations of the federal rights of

Plaintiffs have occurred" sufficient to warrant the relief agreed upon by the parties.  (Doc. No. 81, Exh. 1 at ¶ 42).  Given the uncertainty inherent in protracted litigation, Defendant's contentions would, at the very least, present Plaintiffs with the "substantial risk of incurring the expense of a trial without any recovery."  In re Toys 'R' Us FACTA Litig., 295 F.R.D. at 451.

Given the relative strength of Plaintiffs' claims and the risks and costs associated with future complex litigation, the Consent Decree's terms appear to be reasonable.  These factors thus weigh in favor of granting preliminary approval.

### 3.   Difficulty of Maintaining Class Action Status

The Court may revisit the certification of the class at any time before entry of final judgment.  See Fed. R. Civ. P. 23(c)(1)(C).  Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.  See, e.g., Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009).

Defendant did not oppose class certification.  Both parties filed a Joint Motion for Class Certification on December 1, 2016.  (Doc. No. 44).  The Court certified the class on January 27, 2017.  (Doc. No. 50).  Defendant has not indicated that it only agreed to certification of the class for purposes of settlement.  It is thus unlikely that Defendant would contest certification if the Court rejects the proposed Consent Decree.  Plaintiffs' likely ability to maintain class certification throughout the case weighs against approving the Consent Decree.

United States District Court
Central District of California

### 4.   Amount Offered

The amount offered in settlement is one of the most important factors to be considered by the Court when contemplating preliminary approval. Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 611 (E.D. Cal. 2015). It is often challenging to "judge with confidence the value of the terms of a settlement agreement, especially one [that] provides for injunctive relief," however.  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

Plaintiffs do not seek money damages in their Second Amended Complaint ("SAC").  (Doc. No.  81, Exh. 2 at 3).  To assess overall fairness, the Court must therefore examine the complete settlement package, rather than individual component parts in isolation.   Officers for Justice, 688 F.2d 615, 625, 628; see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424–25 (1968).  ("In order to determine whether this factor favors approval, the Court must compare the amount offered in settlement to the maximum possible recovery.").  In lieu of a maximum monetary possible recovery, the Court will thus measure Plaintiffs' original Claims for Relief against the relief proposed by the Consent Decree.  This Court is also mindful that the parties are in many ways better situated than the Court to assess whether the proposed terms of the Consent Decree adequately respond to Plaintiffs' Claims for Relief. Courts must give "proper deference to the private consensual decision of the parties." Hanlon, 150 F.3d at 1027.

#### a.   Mental, Dental, and Medical Health

In their SAC, Plaintiffs requested that the Court order Defendant to provide minimally adequate mental health, medical care, and dental care. (Doc. No. 41 at 22).  The Consent Decree provides that Defendant will

implement a Plan that addresses, <u>inter alia</u>, "sufficient staffing and intake screening, timely access to appropriate clinicians, timely prescription and distribution of appropriate medications, timely access to specialty care, and timely access to therapy, inpatient treatment, and suicide prevention." (<u>Id.</u> at 22-23; Doc. No. 81, Exh. 1 at Exh. A, 1-13). The relief proposed by the Consent Decree thus closely matches the relief sought by Plaintiffs in their third and fourth Prayers for Relief. (Doc. No. 41 at ¶ 97(C) and (D)).

### b.    Use of Force

In their SAC, Plaintiffs requested that the Court order Defendant to implement a plan to eliminate the excessive use of force in Defendant's Jails. (Doc. No. 41 at 23). The Consent Decree provides that Defendant's Plan will, at a minimum, address deficiencies "in use of force policies, procedures, training, supervision, investigations, and disciplinary practices." (<u>Id.</u> at 23; Doc. No. 81, Exh. 1 at Exh. A, 13). The relief proposed by the Consent Decree thus closely matches the relief sought by Plaintiffs in their third and fifth Prayers for Relief. (Doc. No. 41 at ¶ 97(C) and (F)).

### c.    Equal Access for People with Disabilities

In their SAC, Plaintiffs requested that the Court order Defendant to provide people with disabilities equal access to programs, services, and activities. (Doc. No. 41 at 23). Plaintiffs specifically requested that Defendant's Plan provide accessible housing, delivery of and appropriate access to assistive devices, less restrictive housing for people with psychiatric disabilities, and an effective grievance system to contest disability discrimination. <u>Id.</u> The Consent Decree provides that Defendant's Remedial Plan will ensure that "prisoners with disabilities [are] identified and receive appropriate accommodation in housing and programs." (Doc. No.

United States District Court
Central District of California

81 at 5).  The relief proposed by the Consent Decree thus closely matches the relief sought by Plaintiffs in their third and seventh Prayers for Relief. (Doc. No. 41 at ¶ 97(C) and (H)).

### d.     Reduction of Risk of Injury and Violence and Declaration of Defendant's Violations

In their SAC, Plaintiffs requested that the Court order Defendant to develop and implement a plan to reduce the risk of injury and violence between individuals in its custody.  (Doc. No. 41 at 23).  Plaintiffs specifically requested provides that Defendant's plan, at a minimum, address deficiencies "in use of force policies, procedures, training, supervision, investigations, and disciplinary practices."  Id.  Plaintiffs further requested that the Court declare that "the conditions, acts, omissions, policies, and practices" of Defendant are in violation of the rights of Plaintiffs and the class they represent.  (Id. at 22).  The proposed Consent Decree does not provide a relevant remedy for the relief sought by Plaintiffs in their second and sixth Prayers for Relief.  (Doc. No. 41 at ¶ 97(B) and (G)).  Despite this omission, Plaintiffs provide numerous assurances that the relief proposed by Defendant represents a fair agreement.

* * *

Considering that most of Plaintiffs' substantive Claims for Relief are addressed by Defendant's proposed Plan, as well as the probability of lengthy litigation in the absence of a settlement, the uncertainty that Plaintiffs would be awarded adequate relief if the case went to trial, and the considerable burden that Plaintiffs would face in demonstrating ongoing violations of inmates' rights on a system-wide basis (id. at 9), the Court tentatively finds that the proposed injunctive relief, as a whole, is within the range of reasonableness required to warrant preliminary approval.

United States District Court
Central District of California

### 5.   Extent of Discovery Completed and the Stage of Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir.1998).  Here, the parties demonstrate that class counsel conducted the following discovery: (1) appointing joint neutral experts to issue recommendations; (2) conducting inspections of the Jails; (3) exchanging detailed reports regarding use of force, medical health, and mental health at the Jails; (4) conducting extensive reviews of Defendant's policies and procedures; (5) interviewing inmates and staff; and (6) engaging in direct discussions regarding discrimination against inmates with disabilities, dental care, and policies governing restrictive housing. (Doc. No. 81, Exh. 1 at ¶¶ 4-6).  The Court thus finds that the parties possessed sufficient information to make an informed decision about the settlement.  Accordingly, this factor supports preliminarily approving the Consent Decree.

### 6.   Experience/views of counsel

Since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation," courts tend to give considerable weight to counsel's opinion.  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009) (quoting In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir.1995); see, e.g., Alberto v. GMRI, Inc., No. CIV. 07-1895 WBS, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008) ("When approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits").

United States District Court
Central District of California

Defendants' counsel appear to be "experienced and knowledgeable" in similar types of litigation.  (Doc. No. 81 at 2).  Plaintiffs' counsel have experience in prisoners' rights litigation and complex class action litigation.  (Doc. No. 41 at ¶ 73).  Further, Plaintiffs' counsel believe that the Consent Decree is in the best interests of all plaintiffs who opt in, given that "proceeding through pre-trial motions, trial, and probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy."  (Doc. No. 81 at 9).  Defendant has executed the Plan proposed in the Consent Decree, and has filed this Motion jointly with Plaintiffs.  (Id. at 4).  The Court finds that this factor weights in favor of granting preliminary approval of the Consent Decree.

### 7.    Reaction of class members to settlement

The lack of objections or opt-outs weighs strongly in favor of settlement approval.  See, e.g., Barcia v. Contain-a-Way, Inc., No. CV 07-938 IEG (JMAx), 2009 WL 587844, at *4 (S.D. Cal. Mar.6, 2009); Thompson v. Costco Wholesale Corp., No. CV 14-2778 CAB (WVGx), 2017 WL 3840342, at *7 (S.D. Cal. Sept. 1, 2017).  The parties have provided no evidence regarding class members other than Named Plaintiffs.  The parties have agreed to a proposed notice to the class, which provides class members with a description of the Consent Decree and a mechanism to "tell the Court whether [Plaintiffs] think it is fair."  (Doc. No. 81, Exh. 2 at 2).  Therefore, the Court has limited information to assess the reaction of class members to the proposed settlement.  The absence of this evidence at this stage weighs neither in favor nor against preliminary approval.

United States District Court
Central District of California

### 8.   Attorneys' fees and payment for Named Plaintiffs

The Court has an "independent obligation to ensure that the [attorneys' fees] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth, 654 F.3d at 941. "At the preliminary approval stage, the Court need not make its final decision regarding the reasonableness of attorneys' fees and costs, but need only determine that the requested fees and costs are not the products of apparent collusion." Moppin v. Los Robles Reg'l Med. Ctr., No. CV 15-1551 JGB (DTBx), 2016 WL 7479380, at *10 (C.D. Cal. Sept. 12, 2016).

In their SAC, Plaintiffs sought an award for the costs of this lawsuit and reasonable attorneys' fees.  (Doc. No. 41 at 23).  "In employment, civil rights, and other injunctive relief class actions," courts often use a lodestar calculation because it is hard to accurately assess the net value of the settlement "or any percentage thereof." Hanlon, 150 F.3d at 1029.  Here, the parties have reached a compromise and Defendant has agreed to pay Plaintiffs' counsel $350,000 for merits fees and expenses and $150,000 per year for monitoring fees and expenses.  (Doc. No. 81, Exh. 1 at ¶ ¶ 38-39).

The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate.  Hanlon, 150 F.3d at 1029.  The proposed consent Decree provides that Plaintiffs' counsel shall be compensated at a rate of $420 per hour for attorneys and $200 per hour for paralegals.  (Doc. No. 81, Exh. 1 at ¶ 38).  The hours expended and the rate "should be supported by adequate documentation and other evidence." Hanlon, 150 F.3d at 1029.  Thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent.  Id. The proposed Consent Decree

states that Plaintiffs are required to submit to Defendant a detailed invoice for their fees and expenses, "including the date, amount of time spent, and a general description of each task."  (Doc. No. 81, Exh. 1at ¶ 39).  Given the relief achieved, Defendant's agreement to pay  attorneys' fees, and the risks and costs involved in further litigation, the proposed attorneys' fees seem to represent a "fair, reasonable, and adequate" resolution for the parties.  See Fed. R. Civ. Pro. 23(e)(2).  Until the parties have submitted their time records, however, the Court finds that this factor weighs neither in favor nor against granting preliminary approval to the Consent Decree.

### 9.   Release of claims

The Court must examine whether the Consent Decree includes a release of claims for absent class members and whether any such release is overly broad.  See Spann v. J.C. Penney Corp., 314 F.R.D. 312, 328 (C.D. Cal. 2016) (balancing "fairness to absent class members and recovery for plaintiffs with defendants' business interest in ending this litigation with finality."); Bond. v. Ferguson Enterprises, Inc., No. CV 09-1662 OWW (MJSx), 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) (rejecting settlement for containing an overly broad settlement release of class members' claims); Goodwin v. Winn Mgmt. Grp. LLC, No. CV 15-606 DAD (EPGx), 2017 WL 3173006, at *11 (E.D. Cal. July 26, 2017) (determining release provision to be appropriate since the claims would only be released who affirmatively opted-in and tracked the claims at issue in the lawsuit).

The proposed Consent Decree allows Plaintiffs to raise with Defendant's counsel any individual Plaintiff's concerns related to health care, use of force, restricted housing, or disability accommodation.  (Doc. No. 81, Exh. 1 at ¶ 27).  The proposed Plan specifies that this process is "not meant to

United States District Court
Central District of California

replace or circumvent the existing processes for requesting health services or submitting grievances to jail authorities."  Id.  In addition, the proposed Notice states that the Settlement does not affect Plaintiffs' "ability to sue for money damages or to petition for a writ of habeas corpus."  (Id. at Exh. A). Since the proposed Consent Decree does not bind future claimants and allows class members to remain free to pursue any individual claims against Defendant, the Court finds that this factor weighs in favor of granting preliminary approval.

### B. The Proposed Forms and Method of Notice to Class Members are Fair and Accurate.

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Defendant must provide notice that is "timely, accurate, and informative."  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claims forms must be informative and accurate.  Id. at 172; Churchill Village, LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

The proposed Notice contains in plain language a brief description of Plaintiffs' claims, notice that the parties have entered into a Consent Decree, a description of some of the subject areas covered by the proposed Consent Decree and Plan, the mechanism available for Plaintiffs to bring disputes about Defendant's compliance, and the amount of attorneys' fees to be awarded.  (Doc. No. 81 at Exh. 2).  In addition, Defendant will post the notice in English and Spanish in every housing unit at the Jails, hand deliver a copy of the Notice to inmates in housing units with restricted movement, and provide inmates, upon request, a copy of the Consent Decree and the

Plan.  (Doc. No. 81 at 6).  The Court thus finds that the means of disseminating the notice will allow an adequate opportunity for the class to review and comment on the Consent Decree.

While the proposed Notice is "timely, accurate, and informative," some of the subject areas covered by the Consent Decree are missing from the Notice. Specifically, the proposed Notice does not refer to Plaintiffs' claims and Defendant's proposed relief regarding the use of force, reduced risk of inmate violence, dental care, and use of solitary confinement. The Court finds that the Notice must include reference to the above claims and related relief as described by the Plan.

## IV.    CONCLUSION

After weighing the factors above, the Court agrees to grant preliminary approval to the Consent Decree.  The Court approves the proposed Notice with the above changes.  The Court GRANTS the Joint Motion for Preliminary Approval of Consent Decree and Notice to the Class.

**IT IS SO ORDERED.**

Dated:    6/29/18

Virginia A. Phillips
Chief United States District Judge